UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN WILMOTH,       : | |
|     Plaintiff,       : | |
| : | CIVIL ACTION NO. |
| v.       : | 16-CV-223 (JCH) |
| : | |
| DENISE MERRILL, SECRETARY       : | MARCH 1, 2016 |
| OF THE STATE OF CONNECTICUT      : | |
|     Defendant.       : | |

**RULING RE: MOTION FOR A TEMPORARY RESTRAINING ORDER (DOC. NO. 4)**

**I.   INTRODUCTION**

Shawn Wilmoth ("Wilmoth") has moved for a temporary restraining order enjoining Denise Merrill, the Secretary of the State of Connecticut (the "Secretary"), from enforcing sections 9-468, 9-410, and 9-412 of the Connecticut General Statutes to the extent that they require circulators of party primary nomination petitions to be residents of the State of Connecticut. Plaintiff's Motion for a Temporary Restraining Order (the "Motion") (Doc. No. 4).

The provisions at issue require circulators of petitions seeking inclusion of a candidate in Connecticut's primary election for the office of Present of the United States to be "an enrolled party member of a municipality in this state who is entitled to vote." Conn. Gen. Stat. § 9-468 (incorporating by reference Conn. Gen. Stat. § 9-410(c)). Failure to include an attestation of the circulator's "enrolled party member[ship] in such municipality" in the petition results in its automatic rejection by the registrar. Conn. Gen. Stat. § 9-410(c) & 9-412.

Wilmoth contends that these sections constitute a residency restriction that burdens his rights to free speech under the First and Fourteenth Amendments to the

1

United State Constitution.  Plaintiff's Memorandum (Doc. No. 5) at 9-16.  He argues that such burdens are prohibited by the Supreme Court's decision in, inter alia, Buckley v. Am. Constitutional Law Found., 525 U.S. 182 (1999), the Second Circuit's decision in Lerman v. N.Y.C. Bd. of Elections, 232 F.3d 135 (2d Cir. 2000), and this court's recent decision in Libertarian Party of Conn. v. Merrill, No. 3:15-CV-1851 (JCH) (D. Conn. Jan. 26, 2016), Ruling (Doc. No. 26) (granting plaintiff's Motion for a Preliminary Injunction).

The Secretary opposes the Motion on the ground that the restriction set forth in section 9-410(c) is tantamount to the party membership restriction on primary election petition circulation of which the Second Circuit approved in Maslow v. N.Y.C. Bd. of Elections, 658 F.3d 291 (2d Cir. 2011).  Defendant's Opposition to Plaintiff's Motion ("Opposition") (Doc. No. 21).

For the reasons set forth below, Wilmoth's Motion is **GRANTED**.

## II.    BACKGROUND

Shawn Wilmoth is a professional election petition circulator.  Declaration of Shawn Wilmoth ("Declaration") (Doc. No. 24-1) ¶ 5.  Wilmoth lives in the State of Michigan.  Id. ¶ 2.  He is a registered Democrat, having become a dues-paying member of the Michigan Democratic Party in February 2016.  Id. ¶ 4.

Wilmoth is a supporter of Rocky De La Fuente, a California businessman who is running for the Democratic nomination for the office of President of the United States. Id. ¶ 1; see also Rocky De La Fuente, Meet Rocky, Rocky 2016 (2016), https://www.rocky2016.com/meet-rocky/ (last visited February 29, 2016).  De La Fuente has hired Wilmoth to circulate election nomination petitions to secure his place on the

2016 Connecticut Democratic primary election ballot.  Declaration ¶ 5.  Wilmoth intends to travel to Connecticut in order to carry out his contract.  Id. ¶ 7.

In Connecticut, to obtain access to the presidential primary election ballot, a candidate must either have had his name placed on the ballot "[b]y direction of the secretary when [s]he determines . . . that the candidacy of such person for such party's nomination for President is generally and seriously advocated or recognized according to reports in the national or state news media, unless such candidate files a request [to the contrary];" or, by the submission of a petition for candidacy containing signatures of "a number of enrolled members of such party equal to at least one per cent of the total number of enrolled members of such party in the state."  Conn. Gen. Stat. §§ 9-465 & 9-469.  As the Secretary did not include De La Fuente's name in the Candidate List, he may only obtain access to the primary ballot by obtaining the signatures of 1% of the Connecticut Democratic Party.  Conn. Gen. Stat. § 9-469.  In order to petition onto the ballot successfully, sufficient signatures must be "filed with the registrar of votors of the party holding the primary in the town of voting residence of the signers thereof, not later than four o'clock p.m. of the fifty-third day preceding the day of the primary[,]" which, this year, would fall on March 4, 2016.

Connecticut election law restricts who may serve as a circulator of petitions for ballot access in presidential primary elections.  Specifically, section 9-468 of the Connecticut General Statutes provides, in pertinent part:

> Except as hereinafter provided, such petitions shall be circulated, filed with the registrars of voters, and verified by said registrars, as nearly as may be, in accordance with the provision of sections 9-410 and 9-412.

3

Conn. Gen. Stat. § 6-468. Section 9-410, in turn, provides, in a section governing ballot access to primary elections for "municipal officer or election as town committee members:"

> Each circulator of a primary petition page shall be an enrolled party member of a municipality in this state who is entitled to vote. Each petition shall contain a statement signed by the registrar of the municipality in which such circulator is an enrolled party member attesting that the circulator is an enrolled party member in such municipality. Unless such a statement by the registrar appears on each page so submitted, the registrar shall reject such page.

Conn. Gen. Stat. § 9-410(c). Section 9-412 further provides that "[t]he registrar shall reject any page of a petition which does not contain the certifications provided in section 9-410, or which the registrar determines to have been circulated in violation of any other provisions of section 9-410." Conn. Gen. Stat. § 9-412.

Wilmoth contends that the restrictions set forth in sections 9-468, 9-410(c) and 9-412 constitute a residency restriction that violates his right to free speech under the First and Fourteenth Amendments. Motion at 1. The Secretary argues that, because Wilmoth is not a member of the Democratic Party of Connecticut, he has "no right to engage in any speech collateral to" a political association that he does not have. Maslow v. N.Y.C. Bd. of Elections, 658 F.3d 291 (2d Cir. 2011)

### III. DISCUSSION

A party seeking to obtain a preliminary injunction or temporary restraining order must demonstrate (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. New York Progress and Protection PAC v. Walsh, 733 F.3d 483 486 (2d Cir. 2013). As this case presents

4

similar legal and factual issues as those presented in Libertarian Party of Connecticut v. Merrill, and both parties have sought to make use of that case—either by relying on its reasoning or by attempting to distinguish it from the facts presented here—the court will assume familiarity with both the record in Libertarian Party and the legal reasoning set forth in the Order granting the Party's Motion for a Preliminary Injunction.  Libertarian Party of Conn. v. Merrill, No. 3:15-CV-1851 (JCH), Order (Doc. No. 32) at 10-16.

Wilmoth has, in effect, sought to map his claim onto that raised in Libertarian Party:  that the circulation of nomination petitions is "core political speech," the restriction of which must be narrowly tailored to a compelling state interest.  Id.  If Wilmoth is correct that his case presents the same issue as that presented in Libertarian Party, his Motion should be granted.

The Secretary has sought to remove the facts of this case from the ambit of Libertarian Party by arguing that the restrictions at issue here—that a circulator "be an enrolled party member of a municipality in this state who is entitled to vote"—constitutes a party membership restriction, not a residency restriction.  Opposition at 1 ("Plaintiff seeks to enjoin a provision of Connecticut's election statutes that restrict the circulation of political party primary nomination petitions . . . to individuals who are actually enrolled in and affiliated with the Connecticut Democratic Party.").

In Maslow v. N.Y.C. Bd. of Elections, 658 F.3d 291 (2d Cir. 2011), the Second Circuit upheld a New York election law that restricted circulators of petitions for a political party's nomination to, as relevant here, "enrolled voter[s] of the same political party as the voters required to sign the petition."  Id. at 294.  Relying of a long line of Supreme Court precedent emphasizing "that the First Amendment guarantees a political

5

party great leeway in governing its own affairs," the court concluded that "a political party's associational right to exclude forecloses the possibility that non-members have an independent First Amendment right to participate in party affairs." Id. (citing, inter alia, N.Y.C. Bd. of Elections v. Lopez Torres, 552 U.S. 196, 202-03 (2008); Tashjian v. Republican Party of Conn., 479 U.S. 208, 216 n.6 (1986)).  In response to the contention that the party membership restriction overly burdened the plaintiffs' "highly protected political speech" of ballot circulation, the court answered that "the Plaintiffs are only restrained from engaging in speech that is inseparably bound up with the subscribing witness plaintiffs' association with a political party to which they do not belong.  As plaintiffs have no right to this association, they have no right to engage in any speech collateral to it." Id. at 298 (citing Cal. Democratic Party v. Jones, 530 U.S. 567, 575 (2000).  Maslow, then, stands for the proposition that petition circulation for a party member is not "core political speech" if the circulator is not a member of the party, because the circulator has no associational rights vis-à-vis the political party.

In Maslow, four individuals—one Republican, one Working Family Party member, and two then-unaffiliated voters—served as circulators for two unsuccessful, Democratic candidates for Civil Court Judge in Kings County, New York. Id. at 295; see also Maslow v. N.Y.C. Bd. of Elections, No. 1:06-CV-3683 (NGG) (SMG), Complaint (Doc. No. 1) ¶¶ 4-8.  The signatures obtained by these circulators, none of whom were Democrats, were rejected.  Maslow, 658 F.3d at 295.

The Maslow decision, as Wilmoth observes, "did not implicate First Amendment analysis with respect to out-of-state circulators." Plaintiff's Reply to Defendant's Opposition ("Reply") (Doc. No. 24) at 8.  However, the nature of the Secretary's

6

argument is more subtle: she has suggested that the residency of the circulator and his registration with a party are inextricably linked, and that for this court to grant preliminary relief as to the residency requirement will run afoul of Maslow.  Opposition at 3-7.

The Secretary has not cited, and the court cannot locate, any cases that expressly have held that the party membership restriction in section 9-410(c), or any analogous statutes in other states, necessarily refers to "the Democratic Party of Connecticut," or the local Democratic Party of, for example, Bridgeport.  Indeed, the only authority the court has found on the issue held that section 9-410(c) consisted, not of a "party membership requirement," but rather of an unconstitutional residency restriction in light of Lerman.  Campbell v. Bysiewicz, 242 F. Supp. 2d 164, 170-71 (D. Conn. 2003).  However, that case did not reach the issue presented here and was decided before Maslow.  Consequently, the court will address the Secretary's contention that, contrary to Campbell, section 9-410(c) imposes a party membership, rather than residency, restriction.

As an initial matter, the court may take judicial notice of the fact that the Connecticut branch of the Democratic Party is just that—a branch of a larger organization known as the "Democratic Party," which has national scope.  Indeed, as Connecticut's Mail-in Voter Registration Form, issued pursuant to section 9-23g of the Connecticut General Statutes, asks: "Do you wish to enroll in a political party?  **YES.** Name of party: __ Republican[;] __ Democratic[;] Other: _____."  Connecticut Mail-In Voter Registration, http://www.ct.gov/sots/LIB/sots/ElectionServices/ElectForms/elect

7

forms/ed671.pdf (last visited Feb. 29, 2016).  The registration form does not refer to the local branch of the parties.

The text of the challenged section bears out this distinction.  Section 9-410(c) reads:

> Each circulator of a primary petition page shall be an enrolled party member of a municipality of this state who is entitled to vote.  Each petition shall contain a statement signed by the registrar of the municipality in which such circulator is an enrolled party member attesting that the circulator is an enrolled party member in such municipality.

Conn. Gen. Stat. § 9-410(c).  The statute does not require the circulator to be an "enrolled party member of the state branch of the political party;" it refers simply to the "party" and requires that the circulator be enrolled in such party in a fixed geographical area in Connecticut.  To illustrate the point, when a prospective voter registers to vote in Connecticut, she does so through the "registrars of voters or town clerk of the town of residence of [the prospective voter]."  Conn. Gen. Stat. § 9-12.  Thus, when a prospective voter registers to vote and affiliates herself with a party, the prospective voter is not affiliating herself with, for example, the "Bridgeport Democratic Party"—rather, the prospective voter registers as a "Democrat," and does so when she registers to vote—i.e., enters onto the roll of voters of the municipality of Bridgeport.

The phrase "of a municipality of this state," then, is best read as qualifying the circulator, not the party—thus, the circulator must be a member of a party and must be registered in "a municipality of this state."  She need not be a member of, for example, the Democratic Party of the municipality of Bridgeport.   In sum, nothing in the statute or the case law demands that "enrolled party member" be restricted to the local branch of the party; consequently, the section of the statute Wilmoth challenges consists of a

8

residency requirement—that is, a requirement that one has registered as, for example, a Democrat in, for example, Bridgeport.  Such a restriction, when challenged by a person affiliated with the Democratic Party as Wilmoth is, acts as a residency requirement that burdens "core political speech."  Cf. Maslow, 658 F.3d at 298.

      Unlike the circulators in Maslow, Wilmoth is a dues-paying member of the Democratic Party, Declaration ¶ 4.  Wilmoth hopes to circulate petitions for a candidate who seeks to run as the presidential nominee of the Democratic Party.  Because he has affiliated himself with the Party, it follows that his circulation of petitions constitutes "core political speech," rather than "speech collateral to . . . [an] association with a political party to which [he does] not belong."  Maslow, 658 F.3d at 298.  To the extent that the provisions at issue condition his ability to circulate petitions upon his residency in "municipality in this state," Conn. Gen. Stat. § 9-410(c), those provisions burden his First and Fourteenth Amendment rights to the same degree as the residency restriction burdened the right of the Libertarian Party to hire out-of-state circulators to gain access to the primary ballot.  See Libertarian Party of Conn. v. Merrill, No. 3:15-CV-1851 (JCH) (D. Conn. Jan. 26, 2016), Ruling (Doc. No. 26) at 10-16.  Further, the Secretary has omitted any argument that the restriction at issue can be justified except to the extent that it protects the Connecticut Democratic Party.[1]  This argument is unpersuasive at

---

[1] The Secretary has indicated that the Connecticut Democratic Party and the Republican Democratic Party have been notified of this case, and have been served with copies of the pleadings.  Opposition at 6 n.3.  Neither Party has moved to intervene, and the litigants in this case have not moved for their joinder under Federal Rule of Civil Procedure 19.  Because the court construes the statutes at issue here as imposing a residency restriction, not a party affiliation restriction, the Connecticut Democratic Party's interest is not such that its absence in this litigation would, "as a practical matter impair or impede [it]'s ability to protect [its] interest," and therefore the party is not "required to be joined."  Fed. R. Civ. P. 19(1)(B)(ii).  The Party's interests are already protected by the requirement, unchallenged in the instant litigation, that a circulator be a member of the party.  See Maslow, 658 F.3d at 294

this stage of the case.  Consequently, Wilmoth has a substantial probability of success on the merits.  Walsh, 733 F.3d at 486.   As this court held in Campbell, "[h]ere, as in Lerman, [the Secretary] show[s] no valid justification for a residency requirement." Campbell, 242 F. Supp. 2d at 171.  The court cannot ascertain why Maslow must demand a different result where, as here, the prospective circulator is a member of the same party as the candidate for whom he intends to circulate nominating petitions.

Furthermore, the other factors weighing in favor of a preliminary injunction in Libertarian Party weigh to the same degree in Wilmoth's favor.  Wilmoth has shown a substantial probability of success; the likelihood of irreparable harm in the absence of preliminary relief in the form of "loss of First Amendment rights," Elrod v. Burns, 427 U.S. 347, 353 (1976); that the weight of equities in Wilmoth's favor given the importance of the right implicated; and that an injunction is in the public interest, see Walsh, 733 F.3d at 488 ("securing First Amendment rights is in the public interest").  Consequently, Wilmoth's Motion will be granted.

The court will close with a brief observation that the Secretary's assertion that the equities do not tip in Wilmoth's favor due to his previous conviction is without merit.  See Opposition at 2.  Wilmoth was convicted in 2011 of felony election fraud in the State of Virginia.  Case Record (Doc. No. 21-1) at 1.  Ironically, the underlying offense conduct consisted of knowingly hiring ex-felons to circulate nomination petitions.  Declaration ¶ 10.  On September 20, 2011, he was sentenced to three years' probation with a concurrent suspended sentence of 4 years and 8 months.  Case Record at 2. At no time was he incarcerated for having pleaded guilty of this crime.  Id.  In both his state of

---

(discussing the association rights of political parties and their relationship to party membership restrictions on nomination petition circulation).

residence and the State of Connecticut, ex-felons are entitled to vote upon completion of their term of incarceration or parole.  Mich. Comp. L. Ann. § 168.758b (restricting voting rights of offenders only "while confined"); Conn. Gen. Stat. § 9-46a(a) (restoring ex-felon's voting rights upon "discharge from confinement and, if applicable, parole").

The Connecticut statute restoring felon voting rights makes an exception for those convicted of elections-related crime in Connecticut, it only does insofar as such individuals must first complete, if applicable, any terms of probation imposed as part of their sentence in order to have their elector privileges restored.  Conn. Gen. Stat. § 9-46(b).  The Secretary has not argued that this exception applies to Wilmoth and, even if it did, his term of probation appears to have ended in 2014.  Thus, his felony conviction neither disqualifies him to vote in this State or his state of residence, nor restricts his ability to circulate nominating petitions, because he is neither incarcerated nor on parole.  Case Record at 2.

## IV. CONCLUSION

For the reasons set forth above, Wilmoth's Motion for a Temporary Restraining Order (Doc. No. 4) is **GRANTED**.

**SO ORDERED**.

Dated this 1st day of March, 2016, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

11